IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

IN RE:  CLIFTON C. BROWN, II,                              Case No. 1:19-bk-10580J
                                                                                        (Chapter 13)
    Debtor.

## MEMORANDUM OPINION AND ORDER

Before the Court is the *Motion for Relief from Automatic Stay* (the "**Second Motion**") (Doc. No. 55) filed on June 27, 2019, by The Citizens Bank ("**Citizens Bank**"), along with the *Response to Motion for Relief* (the "**Response**") (Doc. No. 64) filed on July 9, 2019, by Mr. Clifton C. Brown, II (the "**Debtor**") and the *Reply to Response to Motion for Relief* (the "**Reply**") (Doc. No. 67) filed on July 12, 2019, by Citizens Bank.  A hearing was held on the Second Motion, Response, and Reply on July 18, 2019.  Citizens Bank appeared by and through its attorneys, Blair & Stroud, by Mr. Robert D. Stroud, and by and through its Chief Executive Officer, Mr. Phil Baldwin.  The Debtor appeared by and through his attorneys, Niblock & Associates, by Mr. Ryne Johnson, and in person.  After the hearing the Court took the matter under advisement.  For the reasons stated below, the Second Motion is denied.

### I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).  The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 4001 and 9014.

## II. Background

The Debtor filed a voluntary petition for relief under the provisions of Chapter 13 of the United States Bankruptcy Code on January 31, 2019. Citizens Bank is a secured creditor of the Debtor holding a debt secured by the Debtor's residence located at 300 Morris Avenue, Batesville, Arkansas (the "**Residence**"). The Debtor has proposed a Chapter 13 plan treating the debt owed to Citizens Bank as a continuing long-term debt and proposing to pay the regular monthly mortgage payment, plus an additional amount to cure the prepetition arrearage on the claim.

Citizens Bank filed a motion for relief from stay on April 12, 2019 (the "**First Motion**") (Doc. No. 28) seeking relief from stay to foreclose its interest in the Residence. The Debtor responded to the First Motion and an evidentiary hearing was held on May 2, 2019. At the hearing, Citizens Bank requested relief from stay pursuant to Section 362(d)(2) of the Bankruptcy Code. In sum, the Court denied the First Motion finding that Citizens Bank had not met its burden of proof on two elements. First, the Court found that Citizens Bank introduced no evidence from which the Court could find that it held a properly perfected security interest in the Residence.

Second, the Court ruled that Citizens Bank failed to meet its burden of proving a lack of equity in the property under Section 362(d)(2)(A) of the Bankruptcy Code. At the hearing on May 2, 2019, the Debtor valued his Residence at an amount greater than the amount of the debt owed to Citizens Bank based on an appraisal he received from Citizens Bank at the time of the loan. A representative of Citizens Bank then testified and valued the Residence at an amount below the amount of the debt owed to Citizens Bank based on an appraisal Citizens Bank obtained at the time of the loan. The Court found the valuation testimony of both parties

credible. Both appraisals were four years old, obtained around the time of the loan, and prepared by the same appraiser. Neither appraisal was introduced into evidence and no explanation was given as to why there would be two appraisals at the time of the loan with different values by the same appraiser. Based on the foregoing facts, the Court found that the evidence was "even" and because Citizens Bank had not met its burden of proving lack of equity by a preponderance of the evidence, the First Motion was denied without prejudice.

Citizens Bank filed its Second Motion on June 27, 2019, less than two months after the Court denied its First Motion. The Second Motion is also brought under Section 362(d)(2) of the Bankruptcy Code. In the Second Motion, Citizens Bank alleges the value of the Residence, based on a current appraisal, is $168,000.00 and the Debtor has made only four payments to the Chapter 13 Trustee since the case was filed. Citizens Bank seeks relief from stay to pursue its state law remedies arguing there is no equity in the Residence and the Residence is unnecessary for an effective reorganization.

In his Response, the Debtor argues that the issues raised in the Second Motion were determined at the hearing on the First Motion and are barred by the doctrine of *res judicata*. Citizens Bank filed its Reply arguing that the First Motion was denied without prejudice and that the Residence is deteriorating without the Debtor's ability to repair or adequately protect the Residence.

An evidentiary hearing on the Second Motion was held on July 18, 2019. Both parties called witnesses and introduced evidence. At the beginning of the July 18, 2019 hearing, the Court inquired as to whether Citizens Bank was moving under Section 362(d)(1), (d)(2), or both, and counsel for the bank responded, "(d)(2)." (Tr. at 5). Although the Debtor raised the doctrine of *res judicata* in his Response, the defense was not raised or argued by the Debtor at the hearing

on July 18, 2019. Based on the Debtor's failure to raise the defense at the hearing and his failure to object to evidence offered on issues decided at the May 2, 2019 hearing, the Court considers the Debtor to have abandoned this defense and it will not be addressed further in this memorandum opinion and order.

At the hearing on July 18, 2019, Kermit Blevins, a certified real estate appraiser, was called as a witness by Citizens Bank to explain the two 2015 appraisals discussed during the hearing on the First Motion. Mr. Blevins explained that he was asked by Citizens Bank to prepare an appraisal of the Residence in 2015. He prepared the appraisal, valued the Residence at $215,000.00, and sent the appraisal to Citizens Bank. Caleb Spinks, an appraisal review officer with Citizens Bank, reviewed the appraisal and sent an email to Mr. Blevins with questions about the site value and the comparable sales used in the appraisal. Mr. Blevins reviewed the appraisal and determined that some of the items needed to be revised. After decreasing the value of the Residence to $199,000.00, he sent Citizens Bank a second appraisal dated the same date as the first appraisal. The two appraisals were introduced into evidence without objection. Both appraisals describe the Residence as a 1,652 square foot home with three bedrooms and two bathrooms located on 4.5 acres of land. (Pl.'s Exs. 1, 3).

Daniel Storlie, a licensed real estate appraiser, was called as a witness by Citizens Bank to testify regarding the appraisal dated June 17, 2019. No objection was made to Mr. Storlie's testimony regarding the June 17, 2019 appraisal or to the appraisal being admitted into evidence. To prepare the appraisal, Mr. Storlie conducted a site inspection of the Residence, examining both the inside and outside of the Residence. When Mr. Storlie arrived at the Residence, the Debtor was present and told him about defective siding that had been used in the construction of the Residence. Mr. Storlie observed siding boards warping and falling from the west and south

faces of the house. Mr. Storlie also observed that some tile had separated from the wall in the hall bathroom. The siding and tile issues caused Mr. Storlie to add five years to the effective age of the house for purposes of computing the value, which meant he valued the Residence as if it were ten years old. Had there been only normal wear and tear to the Residence he would have used an effective age of five years because the effective age for depreciation purposes is usually determined in five-year increments. Mr. Storlie estimated it would cost $13,000.00 to repair the siding and tile issues. The appraisal was introduced into evidence with an "as is" value of $168,000.00. (Pl.'s Ex. 4).

Phil Baldwin, the Chief Executive Officer of Citizens Bank, testified on behalf of Citizens Bank. He admitted that Citizens Bank made the loan to help the Debtor save his home from a foreclosure sale. The loan was used to pay a judgment held by Merchants and Planters Bank. At the time the loan was made, the Debtor was employed by Citizens Bank.

At the hearing on July 18, 2019, Citizens Bank introduced a loan history report. (Pl.'s Ex. 5). The report reflects a principal balance of $193,863.00, interest in the amount of $6,556.21, late fees of $4,800.00,[1] and "other fees" of $11,046.08, for a total loan balance of $216,265.76 as of June 26, 2019. Mr. Baldwin admitted that the arrearage amount listed in Citizens Bank's proof of claim in the approximate amount of $14,000.00 included many of the fees listed in the loan history report. (Tr. at 46). According to the loan history report, the last payment on the loan was received September 27, 2018, and the loan is due for the September 2018 payment.[2] (Pl.'s Ex. 5).

---

[1] The loan history report reflects that from the first payment due date, May 15, 2015, until the date the last payment was received, September 27, 2018, thirty-nine payments were due (omitting two extended payments). The sixth column of the report reflects that the Debtor made thirty-eight full payments on the loan, but because of the timing of the payments, a $100.00 late charge was assessed on thirty-seven of those thirty-eight payments. (Pl.'s Ex. 5).

[2] Mr. Baldwin testified that the monies received September 27, 2018, paid the July 2018 payment, but he also stated the loan was due for the September 2018 payment. It appears from the sixth column of the loan history report that

5

Mr. Baldwin stated that he was generally familiar with the availability of housing in the Batesville area and believed there were "very nice quality" one-bedroom apartments available for rent between $700.00 and $900.00 per month. (Tr. at 43).

The Debtor testified on his own behalf. He has been working at First Community Bank since September 2015 and is employed as manager of sales and operations for merchant services. In addition to his job at First Community Bank, he recently began working part-time at Oscar's Smokehouse and Grill. He filed this bankruptcy case after Citizens Bank filed a foreclosure action on his Residence. His most recently filed plan treats Citizens Bank's claim as a continuing long-term debt to be paid the regular monthly payment of $1,021.34, plus an additional $265.33 per month to cure a $14,592.44 prepetition arrearage, the same arrearage amount reflected on Citizens Bank's proof of claim. (Debtor's Ex. 1 at 4; Debtor's Ex. 2 at 5). The Debtor's current plan also proposes to pay First Community Bank as a secured creditor holding an interest in the Debtor's vehicle.

The Debtor testified about the Residence. The land on which his home sits was deeded to him by his parents. His parents live next door and have owned the property for over twenty years. The Debtor helps his parents by mowing, cleaning, and watching their house when they are out of town. The Debtor testified that his niece also lives with his parents and he often takes her to school, dance, and other places. The Residence is about five miles from his job at First Community Bank and just a couple of miles from his niece's dance class. The Debtor testified he believes his house is necessary for him to live and losing the property would be very difficult for him. He acknowledged apartments were available for rent in the Batesville area and agreed

---

the Debtor made an additional payment in the full amount of $1,021.34 that was not applied to the loan. It appears this additional payment would have been applied to the August 2018 payment, which would be consistent with Mr. Baldwin's testimony that the loan is due for the September 2018 payment.

6

with Mr. Baldwin's testimony on the monthly rental rates, but he added there would be additional costs associated with moving such as a security deposit. He also raised concern that his current bankruptcy would not be viewed favorably on a credit check.

The Debtor obtained insurance on the Residence in May 2019, and the premium payments continue to be paid by automatic draft. He intends to pay the 2018 real estate taxes owed on the Residence by October 2019 using money earned from his part-time job.

Regarding the defective siding used in the construction of his Residence, the Debtor introduced into evidence a "CertainTeed Fiber Cement Siding Class Action Settlement Claim Form." (Debtor's Ex. 3). The Debtor explained that he filed a claim for the defective siding around June 21, 2019, and has been informed that the claims process generally takes about ninety days. He testified that any money received on the claim would be used to repair the siding.

As to the bankruptcy, the Debtor testified that he believes he can afford his plan payments. The evidence revealed that the Debtor made his first payment to the Chapter 13 Trustee in April 2019. Although he originally proposed to make the payments directly to the Chapter 13 Trustee, he modified his plan to have these payments made by employer deduction to make sure they are timely made.

### III. Discussion

Citizens Bank seeks relief from stay under Section 362(d)(2) of the Bankruptcy Code. As a threshold requirement, the creditor has the burden of proving that it has an interest in the property subject to the motion and that its interest is in need of protection. *First Nat'l Bank of Denver v. Turley*, 705 F.2d 1024, 1026 (8th Cir. 1983) ("creditor must show the court that its interest in the debtor's property is sufficiently clear and in need of protection to justify

exempting the property from the normal course of bankruptcy proceedings"); *see also In re May*, No. 4:02-bk-14785E, 2002 WL 32114562, at *3 (Bankr. E.D. Ark. July 18, 2002) (secured creditor must first establish the amount of its secured claim, as well as the validity and perfection of its security interest).

The preliminary issue concerning Citizens Bank's interest in the Residence was satisfied at the July 18, 2019 hearing by the parties' joint stipulation that Citizens Bank has a claim secured by a properly perfected mortgage on the Residence.

Once the preliminary requirement is met, Section 362(d)(2) provides that the Court must grant relief from the automatic stay, such as by "terminating, annulling, modifying, or conditioning" the stay, if "the debtor does not have an equity in such property" and "such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2) (2012).

Section 362(d)(2) thus requires a two-part analysis. First, the Court must determine if the movant has met its burden of proving a lack of equity in the property. 11 U.S.C. § 362(d)(2)(A), (g)(1) (2012). Once the movant establishes a lack of equity, the burden shifts to the debtor to prove that the property is necessary for an effective reorganization. 11 U.S.C. § 362(d)(2)(B), (g)(2) (2012).

### A. Equity in the Residence

Citizens Bank introduced the June 17, 2019 appraisal prepared by Daniel Storlie and reviewed by Kermit Blevins, valuing the Residence at $168,000.00. (Pl.'s Ex. 4). The evidence revealed that the value has declined since the 2015 appraisal reports, primarily because of the defective siding on the Residence and the resulting increase in the effective age of the home. The Debtor explained that the defective product, CertainTeed Fiber Cement Siding, is the subject of a class action settlement, and that he has investigated the claims process, gathered the

information required, and submitted the appropriate claim form for consideration. He further testified that any funds received from the settlement would be used to repair the siding.

While the Debtor explained the issues with the siding, he did not present any evidence to contradict the $168,000.00 appraised value. Mr. Baldwin testified that the current balance of the loan was a little over $216,000.00, which was consistent with the loan history report that reflected a total amount due of $216,265.76 as of June 26, 2019. (Pl.'s Ex. 5). The amount due on the loan was not disputed by the Debtor. Therefore, based on the appraisal, loan history report, and the testimony of Messrs. Storlie, Blevins, and Baldwin, the Court finds that Citizens Bank met its burden of proving a lack of equity in the Residence.

### B. Necessary for an Effective Reorganization

Having found a lack of equity in the Residence, the Court must next determine whether the Residence is necessary for an effective reorganization as contemplated by Section 362(d)(2)(B) of the Bankruptcy Code in this Chapter 13 case.[3] The Debtor bears the burden of proof on this issue. 11 U.S.C. § 362(g)(2) (2012).

As it concerns a debtor's residence, "most courts have held that in a Chapter 13 case, a debtor's home is necessary for an effective reorganization." *In re Ramos*, 357 B.R. 669, 672 (Bankr. S.D. Fla. 2006); *see also, e.g.*, *In re Smith*, 245 B.R. 622, 624–25 (Bankr. W.D. Mo. 2000) (finding home necessary for reorganization in Chapter 13 even though relief from stay had been granted on same property in a previous Chapter 7 case); *In re Parks*, 193 B.R. 361, 366 (Bankr. N.D. Ala. 1995) ("Nothing could be more related to an effective reorganization than the ability to keep and pay for [the debtors'] house."); *Lomas Mortg. USA, Inc. v. Elmore (In re*

---

[3] The Court's analysis is under Section 362(d)(2)(B) only as it applies in the context of a Chapter 13 case.

9

*Elmore)*, 94 B.R. 670, 677 (Bankr. C.D. Cal. 1988) ("A debtor's principal residence in a Chapter 13 case is virtually always necessary to an effective reorganization.").

In addition to finding the property necessary, courts also evaluate whether the debtor can propose a confirmable plan. *See In re Ennis*, 178 B.R. 177, 183 (Bankr. W.D. Mo. 1995); *In re Loury*, No. BK11-41632-TLS, 2011 WL 5024302, at * 2 (Bankr. D. Neb. Oct. 20, 2011). Many debtors seek Chapter 13 relief to save their homes after experiencing financial difficulties. *In re Parks*, 193 B.R. at 364. It is not uncommon for a debtor to file bankruptcy with a prepetition arrearage on his home mortgage payments. Indeed, arrearages are contemplated in Chapter 13 cases and the provisions of Chapter 13 specifically allow for the curing of defaults through the Chapter 13 plan. *See* 11 U.S.C. § 1322(b)(3), (b)(5), (c) (2012).

Citizens Bank argues that the Residence is not necessary for an effective reorganization. It argues the Debtor could live in an apartment instead of the Residence and by doing so may actually save money on housing. It was not disputed that there are one-bedroom apartments available in the Batesville area that would have a lower monthly rental payment than the Debtor's loan payment. The Court, however, does not believe the analysis is quite this simple.

The Debtor filed his bankruptcy case to save his home after Citizens Bank began foreclosure proceedings. The Residence is a 1,652 square foot home with three bedrooms and two bathrooms. He built the home on property deeded to him by his parents. His parents live next door to the Residence and have owned the property there for over twenty years. The Debtor helps his parents by mowing their yard, cleaning, and watching their house when they are out of town. Also, the Debtor helps his parents care for his niece by taking her to school, dance, and other places. The Residence is only five miles from his work and just a couple of miles from his niece's dance class. While the Debtor acknowledged that apartments are available in the

Batesville area, he testified that he believes his house is necessary for him to live and losing the property would be very difficult for him. He further testified that he believes his bankruptcy filing would be an impediment to finding an apartment.

Based on the specific facts before the Court, the Court finds that the Residence is necessary. Moving from a home that he built and owns to a rental unit away from his family property and farther away from his parents and niece would be unsettling and disruptive.

In addition, the evidence revealed that an effective reorganization is possible. The Debtor has proposed a realistic Chapter 13 plan in an attempt to save his home. His most recently filed plan reflects only two secured claims: the claim held by Citizens Bank secured by his Residence and a claim held by First Community Bank secured by his vehicle. The current plan treats Citizens Bank's claim as a long-term continuing debt to be paid the regular monthly payment of $1,021.34, plus an additional $265.33 per month to cure the prepetition arrearage of $14,592.44, the exact arrearage amount stated in Citizens Bank's proof of claim.[4] Under this plan, Citizens Bank's arrearage claim, which includes various fees listed in its loan history report, will be paid in full during the life of the plan.

The amended Chapter 13 plan also provides for the plan payment to be made by employer withholding. The Debtor testified that the payroll deductions had started and his employer, First Community Bank, was making the payments to the Chapter 13 Trustee. The Debtor has worked for First Community Bank for nearly four years and testified that based on his past earnings he believes he can afford the plan payments. The Court finds his testimony credible. The Court further finds the Debtor appears to be on track to succeed in this bankruptcy case and save his home.

---

[4] There is no evidence in the Court's record that Citizens Bank has objected to this plan treatment.

11

Many cases discuss the goal of bankruptcy as providing a debtor with a "fresh start." This Court believes that stripping the Debtor of ownership of his property and requiring him to move to a one-bedroom apartment without affording him an opportunity to reorganize to save his home has the Debtor taking a "step backwards" rather than affording him a "fresh start."

For all of these reasons and based on the specific facts before the Court, the Court finds that that the Debtor has met his burden of proving the Residence is necessary for an effective reorganization.

### IV. Conclusion

For the reasons stated above, the Court finds that the Second Motion filed by Citizens Bank under Section 362(d)(2) of the Bankruptcy Code should be denied. While the creditor met its burden of proving a lack of equity in the Residence, the Debtor met his burden of proving the Residence is necessary for an effective reorganization in this Chapter 13 case. Because both prongs of Section 362(d)(2) must be met before relief may be granted, the Court finds that the Section Motion should be and hereby is DENIED.

**IT IS SO ORDERED.**

_/s/ Phyllis M. Jones_
Phyllis M. Jones
United States Bankruptcy Judge
Dated: 08/01/2019

cc: Mr. Robert D. Stroud
Mr. Ryne Johnson
Mr. Clifton C. Brown, II, Debtor
Mr. Mark T. McCarty, Chapter 13 Trustee
Citizens Bank